# EXHIBIT A

ELECTRONICALLY FILED
9/22/2026 11:04 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 26-2-09794-31

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| JARED GILL and MARK KELLEY, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENDER MUSICAL INSTRUMENTS CORPORATION,<br><br>Defendant. | Case No.: 26-2-09794-31<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Jared Gill and Mark Kelley, individually and on behalf of others similarly situated, on information and belief except to their own experiences and matters of public record, complain of Defendant Fender Musical Instruments Corporation ("Defendant" or "Fender") as follows:

## I. INTRODUCTION

1. This is a putative class action under Washington law brought to address deceptive and unlawful emails that plague consumers' inboxes. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

2. Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).

3. Defendant Fender specializes in manufacturing and selling "guitars, basses, amps, accessories and digital experiences" (the "Products") through its website, https://www.fender.com/. Fender engages in the precise activity which CEMA prohibits.

4. Fender spams Washington consumers, including Plaintiffs, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with Defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e., purchase*—is short.

6. There is nothing wrong with a legitimate sale. But advertising a sale with a false expiration date is deceptive and illegal, and advertising false and misleading time limits in the subject line of a promotional email violates CEMA and the Washington Consumer Protection Act ("CPA"). *Brown v. Old Navy, LLC*, 4 Wash. 3d 580 (2025).

7. And through this deceptive time-sensitivity, Fender falsely narrows the field—steering consumers away from shopping for better deals—to its own products and services, which must be purchased *now*.

8. Plaintiffs challenge Defendant's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

## II. JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction under the Washington State Constitution, which sets forth the jurisdiction of Washington Superior Courts. This Court also has subject matter jurisdiction under the Consumer Protection Act ("CPA"), RCW 19.86.090, which authorizes a civil action in superior court to enjoin violations and to recover damages, costs, and reasonable attorneys' fees, and under the Commercial Electronic Mail Act ("CEMA"), RCW 19.190.090(1), which authorizes a civil action in superior court to enjoin further violations of CEMA.

10. This Court has personal jurisdiction over Defendant under RCW 4.28.185. Defendant transacts business in Washington. The claims giving rise to this action arise from Defendant's transaction of business in this state and Defendant's purposeful transmission of electronic mail messages to Washington residents. This Court also has personal jurisdiction over Defendant under RCW 19.86.160 because Defendant engaged in conduct in violation of the CPA that had an impact in Washington. Finally, Plaintiffs received emails from Defendant while in Washington.

11. Venue is proper in Snohomish County Superior Court because Defendant is deemed to reside in Snohomish County for purposes of venue: Defendant transacts business in Snohomish County and transacted business in Snohomish County at the time the causes of action arose. RCW 4.12.025(1)(a), (c). At all relevant times, Defendant transacted business in Snohomish County, including by sending electronic mail messages to residents of Snohomish County and by selling products to customers living in Snohomish County, including Plaintiff Gill.

## III. PARTIES

12. Plaintiff Jared Gill is a resident of Snohomish County, Washington.

13. Plaintiff Mark Kelley is a resident of Lewis County, Washington.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

14. Defendant Fender Musical Instruments Corporation is a corporation incorporated in Delaware, with its principal address at 1575 N Gower Street, Suite 170, Los Angeles, California 90028.

15. Defendant conducts substantial business in Washington, including by selling and shipping the Products to Washington consumers, collecting Washington sales tax, and directing commercial marketing emails to Washington residents.

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

16. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

17. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

18. While it has been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email—*i.e.,* spam email—have grown exponentially.

19. The problems, however, are not limited to the existence and sheer volume of spam emails—they also extend to its content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

20. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

21. In 2012, one study estimated that Americans bear "costs of almost $20 billion



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

22. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

23. Consumers therefore routinely "consent" to receive flurries of commercial emails that they did not meaningfully request and in which they have no genuine interest.

24. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

25. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

26. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting, among other things, commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

27. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

28. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

29. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

30. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

31. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

32. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Fender's marketing emails make false time scarcity claims.**

33. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

34. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 33, at 22.

35. "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture, supra* para. 33, at 27.

36. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

37. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 33, at 26.

38. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

39. Under time pressure, "consumers might take up an offer to minimize the uncertainty of passing it up." *Id.*

40. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit.*

41. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

42. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

43. These false time scarcity claims are a staple of Fender's email scheme to compel consumers to purchase its products.

44. Fender is an online retail company specializing in manufacturing and selling "guitars, basses, amps, accessories and digital experiences." The company's merchandise is available online at https://www.fender.com/.

45. To advertise its products and encourage online purchases, Fender spams consumers with emails promoting deals on its products.

46. **Urgent Spam Emails.** Unfortunately for those email recipients, Fender regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

47. For years, Fender has engaged in a consistent pattern of advertising deals on its products that it initially promotes through spam emails announcing the offer, promotion, or sale.

48. Once it has hooked consumers on the advertised promotion—often branded with a seasonal theme—Fender uses the subject lines of follow-up emails to present the deal as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to make online purchases before Fender's false "deadline." Then, once the originally advertised "deadline" has passed, Fender knowingly revives the promotion by offering the same discount on the same items shortly thereafter.

49. While Fender may present these revivals as though they are a favor or unexpected blessing to consumers, they are anything but. By deploying false time pressure with surprise



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

revivals—which are only disclosed once the original promotion has ended—Fender compels consumers to purchase quickly while withholding terms that consumers need so they can make informed buying decisions.

50. This misleading marketing strategy allows Fender to maximize sales during both the initial promotion and the subsequent revival.

51. For example, on December 1, 2024, Fender sent emails to consumers with the subject line: "Ends TONIGHT! Shop Up to 50% Now!" The body of the email emphasized that customers could save "Up To 50% Off" for Fender's Black Friday sale. The fine print of the email informed customers that the Black Friday offer was valid until "11:59:59 pm PST on December 1st, 2024."

52. However, the Black Friday discount did not "End TONIGHT!" On December 2, 2024, Fender sent another email to consumers with the subject line: "Cyber Week Starts NOW" The body of the email announced that consumers could now save up to 50% off for Fender's Cyber Week sale.

53. Fender used the same technique on January 19, 2025, when it sent an email to consumers with the subject line "20% Off Select Web Exclusives | ENDS TONIGHT[.]" The body of the email informed consumers they could save 20% off for Fender's "Flash Sale[.]" The fine print of the email made it clear that the discount was valid "until 11:59:59pm PST on January 19, 2025."

54. Three days later, on January 22, 2025, Fender sent another email to consumers with the subject line "Hurry! Winter Sale Ends Tomorrow" The body of the email informed consumers they could now save up to 20% off on "guitars and more" for Fender's Winter Sale.

55. Thus, just a few days after warning consumers that they only had until the end of



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

the day to access the 20% off deal, Fender revived its 20% off Flash Sale and was now calling it the "Winter Sale", showing that the information in the January 19 subject line was false and misleading. The false deadline was simply a marketing strategy meant to compel consumers to purchase items from the Defendant's website faster.

56. Another example occurred on February 23, 2025, when Fender sent an email to consumers with the subject line "Final Hours: Up to 20% Off[.]" The body of the email warned consumers that it was their "Last Chance" to save "Up To 20% Off" for Fender's Presidents' Day Sale. The fine print of the email emphasized that the offer was valid "until 11:59:59pm on February 23rd, 2025."

57. But it was not consumers' "Last Chance" to save 20% like Fender warned because on February 28, 2025, Fender sent another email to consumers with the subject line "Save Up to 20% 🎸 [.]" The body of the email confirmed that customers had more time to save 20% off on Fender's website.

58. Fender used this same strategy on May 12, 2025, when it sent an email to consumers with the subject line "FINAL HOURS | Up to 20% Off[.]" The body of the email informed consumers they could save "up to 20% off select guitars and basses." The fine print of the email emphasized that the discount was available "until 11:59:59pm PST on May 12th, 2025."

59. Yet, the very next day, on May 13, 2025, Fender sent an email to consumers announcing its Memorial Day Sale. The body of the email informed consumers they could save "up to 20% off" on guitars and basses.

60. Fender's "FINAL HOURS" representation in its May 12 email was misleading because the very next day consumers had another opportunity to save 20% off on guitars and basses.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

61. Fender used this same deceptive practice for that same Memorial Day Sale just a few weeks later. On June 1, 2025, Fender emailed consumers with the subject line "Ends Tonight | Extended Deals[.]" The body of the email announced that the 20% deal "ENDS TONIGHT[.]"

62. Later that same day, Fender sent consumers another email with the subject line "Memorial Day Sale | Final Hours[.]" The body of the email emphasized that consumers had "one more chance to save[.]" The fine print of the email emphasized that the 20% off discount was valid "until 11:59:59pm PST on June 1st, 2025."

63. But by the end of that week, on June 7, 2025, Fender emailed consumers again with the subject line "Up to 20% Off | Limited Time[.]"

64. Despite Fender's warnings that June 1 was the last chance to save 20%, the same discount was revived, and consumers had more time to save.

65. Fender has used other deceptive practices in its promotions as well.

66. For example, Fender also uses promotion extensions. In these examples, Fender emphasizes the impending deadline of a sale or promotion, and pressures consumers to make online purchases before the false "deadlines." Then once the deadline has passed, Fender knowingly extends the promotion to a new end date shortly thereafter.

67. Fender used this deceptive extension practice on September 4, 2022, when it sent an email to consumers with the subject line "Our Labor Day Sale Ends Tomorrow[.]" The body of the email warned customers that their opportunity to save "Up To 50% Off" on guitars, amps and gear would end the following day.

68. On September 5, 2022, Fender emailed consumers with the subject line "Ends Tonight! Save Up to 50% on Guitars, Amps & Gear[.]" The body of the email assured consumers that "This is it. Seriously." The fine print of the email confirmed that the Labor Day Sale was valid



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

"through September 5, 2022."

69. But there was nothing "Serious" about that September 5 email. On September 7, 2022, Fender sent consumers another email with the subject line "Extended: 50% Off Guitars, Amps & Accessories[.]"

70. The false scarcity manufactured by Fender in its September 5 email might compel a consumer to take urgent action and purchase a guitar, amp or gear for up to 50% off even though the offer would be extended two days later.

71. Fender used this deceptive practice again for its 2025 Presidents' Day sale. On February 15, 2025, Fender emailed consumers with the subject line "Ends Tomorrow: Save Up to 20% NOW!" The body of the email warned consumers the Presidents' Day deal for up to 20% off guitars "Ends Tomorrow."

72. On February 16, 2025, Fender emailed consumers again with the subject line "Ends TONIGHT 🎸 Our Presidents' Day Sale Is Almost Over!" The body of the email cautioned that "These deals will be gone soon!"

73. But three days later, on February 19, 2025, Fender sent consumers another email with the subject line "SURPRISE! Presidents' Day Sale Is Extended[.]"

74. Fender's "Ends TONIGHT" representation in its February 16 subject line was deceptive. By representing that consumers had only a few hours remaining to obtain discounts of up to 20% off, Fender created a false sense of urgency designed to induce immediate purchases. In reality, consumers could still obtain the same discounts three days later, meaning there was no need to act within the purported deadline.

75. Fender continued this same misleading practice during its Memorial Day Sale later that year. On May 25, 2025, Fender sent an email to consumers with the subject line "Memorial



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Day Sale | Ends Tomorrow[.]" The body of the email warned that the 20% discount "Ends Soon[.]"

76. On May 26, 2025, Fender sent consumers another email with the subject line "Memorial Day Sale | Ends Tonight[.]" The body of the email warned "There's just a few hours left to get great deals[.]"

77. But the 20% discount did not end that day. Two days later, on May 28, 2025, Fender emailed consumers with the subject line "Memorial Day Sale Extension[.]" The body of the email made it clear that consumers had more time to save up to 20% off on guitars, basses and gear.

78. Thus, Fender's May 25 and May 26 subject lines were false and misleading. By representing that consumers had only a limited time remaining to obtain 20% off, Fender created a false sense of urgency designed to induce immediate purchases. In reality, consumers who waited until May 28 could still obtain a 20% discount.

79. In short, Fender engages in different email marketing strategies whereby it creates a false sense of urgency, misrepresents when sales end, and then arbitrarily extends, increases or revives those sales to further pull in consumers with subject headings that are just not true.

**C. Fender knows when it sends false and misleading emails to Washington residents.**

80. Washington's CEMA regulates deceptive email marketing. CEMA prohibits any person from initiating the transmission of a commercial electronic mail message to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident where the message "[u]ses a subject line which, based on the person's actual knowledge or knowledge fairly implied on the basis of objective circumstances, contains false or misleading information in the subject line." RCW 19.190.020(1)(b). CEMA separately makes it a violation of the CPA to initiate the transmission of a commercial electronic mail message that "[c]ontains false or misleading information in the subject line," without regard to the sender's knowledge. RCW



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

19.190.030(1)(b).

81. Violating these provisions of CEMA also violates the CPA. RCW 19.190.030; RCW 19.190.100. The Legislature has found that the practices CEMA covers are "matters vitally affecting the public interest," that a violation "is not reasonable in relation to the development and preservation of business," and that a violation "is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act." RCW 19.190.030(3); RCW 19.190.100.

82. Advertising discounts in the subject line of a promotional email, with fake time pressure, violates CEMA and, accordingly, the CPA. Brown v. Old Navy, LLC, 4 Wash. 3d 580, 567 P.3d 38 (2025).

83. CEMA's protections do not depend on whether an email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line.

84. Defendant's email advertisements contain subject lines that misstate the duration of the purported sales. As a result, these promotional emails contain false or misleading information in the subject line, in violation of CEMA and the CPA.

85. Defendant sends these emails for the purpose of promoting the Products for sale and to drive sales to the website.

86. Defendant's email subject lines stating the supposed duration of its sales are false and misleading because, as discussed above, the sales did not expire at the advertised time.

87. By misrepresenting the duration of its purported sales in email subject lines, Defendant creates a false sense of urgency.

88. Defendant is constantly sending commercial emails to recipients on its website's



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

mailing list, often multiple times a week. Plaintiffs and Class Members received such emails from Defendant, many of which include false or misleading subject lines regarding time limits on discounts.

89. A sophisticated commercial enterprise like Fender, which is engaged in persistent marketing through mass email campaigns across the United States, knows (or has reason to know) where the recipients of its marketing emails are located—including to residents of Washington. The means it employs to send these false and misleading emails are peculiarly within its knowledge, for at least the following reasons:

90. First, the sheer volume of email marketing that Fender engages in puts it on notice that Washington residents would receive its emails.

91. Second, Fender obtains location information tied to email addresses when consumers make purchases from its digital platforms, including its website, https://www.fender.com/, or otherwise self-report such information to Fender.

92. Third, for consumers who visit Defendant's website and register an account, on information and belief, Defendant has access to data regarding the recipient's state of residence via geolocation and IP address tracking. As an initial matter, IP addresses are sufficient to confirm the user's physical location including city, state, and zip code.[1] And as Defendant's Privacy Policy states under the heading "What Information Does Fender Collect?", Fender collects (among other things) "[c]ontact information, including name, address, phone number, and email address".[2]

93. Fourth, Fender has access to granular location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax,

---

[1] See https://nordvpn.com/ip-lookup/ ("Looking up an IP address shows you the geolocation of that IP address, including the country, state, city, and zip code.")

[2] See https://www.fender.com/pages/privacy-policy (effective July 1, 2026).



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

which sell access to databases linking email addresses to physical locations, among other identifiers. Defendant can purchase consumer data from these brokers which connects individuals to email addresses, state of residence, and physical location. To that end, Defendant's Privacy Policy states that "we collect some information that your technologies may automatically provide to us, including Internet or other electronic network activity information, such as your device's IP address, referring website, what pages your device visited, and the time that your device visited the Fender [website]" and that Fender "receive[s] information from data brokers" including "contact information such as name, address, and zip code."[3]

94. Fifth, Fender may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

95. Sixth, Fender may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

96. It is thus highly probable that a seller with the size and sophistication of Fender employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

### D. Defendant Acted with Actual Knowledge, and with Knowledge Fairly Implied on the Basis of Objective Circumstances, that its Emails were False or Misleading

97. Defendant had actual knowledge that the emails described herein (as well as countless other similar emails) were false and misleading.

98. Defendant alone sets the start dates, end dates, and terms of its own "promotions."

---

[3] See *Id.*



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Whether a promotion advertised as ending on a particular day would in fact end on that day was at all relevant times within Defendant's exclusive knowledge and control.

99. Defendant, or persons acting at Defendant's direction and on Defendant's behalf, drafted, reviewed, approved, and scheduled each subject line identified in the e-mails described above. Defendant selected the recipient lists and the transmission times. On information and belief, any email service provider or marketing vendor transmitted the emails at Defendant's direction, using Defendant's brand and sending domain.

100. Defendant's own subject lines establish its knowledge. On repeated occasions Defendant announced in the subject line itself that a promotion it had just represented to be expiring had been "Extended." *Supra* ¶¶ 61–77.

101. These emails follow a consistent and repeated pattern spanning nearly three years: Defendant announced that a sale was ending, and then within a one-to-seven day period, announced that the same or better sale was extended, reinstated, or newly available. *Id.*

102. The regularity and repetitiveness of this pattern shows that the extensions were planned before the corresponding deadline emails were ever sent. On information and belief, Defendant's marketing calendars, promotional schedules, and campaign briefs reflected the extension or reinstatement of each promotion at the time Defendant transmitted the email representing that the promotion was about to end.

103. On information and belief, Defendant monitors and tests the performance of its email subject lines, including by testing urgency language and by measuring open rates, click-through rates, and conversion rates. Defendant therefore knows that false urgency increases sales, and it used false urgency for that reason. Defendant used the subject lines based on its actual knowledge that they contained false or misleading information. In the alternative, Defendant used



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

those subject lines based on knowledge fairly implied on the basis of objective circumstances, within the meaning of RCW 19.190.020(1)(b).

**E. Research Confirms That Time-Limited Discounts Influence Consumer Behavior and Perceptions of Value.**

104. Studies and articles support the effectiveness of Defendant's deceptive email scheme.

105. "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases."

106. "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."

107. Additionally, as "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities."

108. A study regarding the effect of the time-limited advertisement "10 Hours Only Super Sale" concluded that "[t]he willingness to buy was significantly higher" and "the attitude towards the deal was more favorable."

109. An article explains that, in a test case, the addition of countdown timers increased conversion rates "from ~3.5% to ~10%."

110. Another article explains: "We compared the performance to previous 'big sale' campaigns featuring a similar single-minded design, but without the countdown timer. The uplift was impressive showing . . . 400% higher conversion rate" with countdown timer.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

111. Thus, creating a false sense of urgency is a common way that online marketers manipulate consumer choice. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached."

112. False scarcity claims are psychologically effective and harm consumers by manipulating their decision-making to their detriment—and the seller's benefit.

113. Accordingly, research confirms that deceptive discount advertising is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

**F. Fender violated Plaintiffs' right under CEMA to be free from deceptive commercial emails.**

114. Fender has spammed Plaintiffs with commercial emails whose subject lines contain false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA. On information and belief, Defendant knew that Plaintiffs were residents of Washington and that any emails sent to Plaintiffs would be sent to Washington residents.

115. For example, Plaintiff Jared Gill has received emails containing false or misleading subject lines sent by Fender, as described above in Section B. The following messages were sent to Plaintiff Gill's personal Gmail address:

a. Plaintiff received the email described *supra* at ¶ 51 sent on December 1, 2024, with the subject line: "Ends TONIGHT! Shop Up to 50% Now!"

b. Plaintiff received the email described *supra* at ¶ 53 sent on January 19,



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

2025, with the subject line: "20% Off Select Web Exclusives | ENDS TONIGHT"

c. Plaintiff received the email described *supra* at ¶ 71 sent on February 15, 2025, with the subject line: "Ends Tomorrow: Save Up to 20% NOW!"

d. Plaintiff received the email described *supra* at ¶ 72 sent on February 16, 2025, with the subject line: "Ends TONIGHT ✐ Our Presidents' Day Sale Is Almost Over!"

e. Plaintiff received the email described *supra* at ¶ 56 sent on February 23, 2025, with the subject line: "Final Hours: Up to 20% Off"

f. Plaintiff received the email described *supra* at ¶ 58 sent on May 12, 2025, with the subject line: "FINAL HOURS | Up to 20% Off"

g. Plaintiff received the email described *supra* at ¶ 76 sent on May 26, 2025, with the subject line: "FINAL HOURS | Memorial Day Sale"

h. Plaintiff received the email described *supra* at ¶ 62 sent on June 1, 2025, with the subject line: "Memorial Day Sale | Final Hours"

116. Plaintiff Gill received Defendant's emails at issue while he was physically present in Washington.

117. Plaintiff Mark Kelley has received emails containing false or misleading subject lines sent by Fender, as described above in Section B. The following messages were sent to Plaintiff Kelley's personal Hotmail address:

a. Plaintiff received the email described *supra* at ¶ 51 sent on December 1, 2024, with the subject line: "Ends TONIGHT! Shop Up to 50% Now!"

b. Plaintiff received the email described *supra* at ¶ 53 sent on January 19,



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

2025, with the subject line: "20% Off Select Web Exclusives | ENDS TONIGHT"

c. Plaintiff received the email described *supra* at ¶ 71 sent on February 15, 2025, with the subject line: "Ends Tomorrow: Save Up to 20% NOW!"

d. Plaintiff received the email described *supra* at ¶ 72 sent on February 16, 2025, with the subject line: "Ends TONIGHT ✐ Our Presidents' Day Sale Is Almost Over!"

e. Plaintiff received the email described *supra* at ¶ 56 sent on February 23, 2025, with the subject line: "Final Hours: Up to 20% Off"

f. Plaintiff received the email described *supra* at ¶ 58 sent on May 12, 2025, with the subject line: "FINAL HOURS | Up to 20% Off"

g. Plaintiff received the email described *supra* at ¶ 76 sent on May 26, 2025, with the subject line: "Memorial Day Sale | Ends Tonight"

118. Plaintiff Kelley received Defendant's emails at issue while he was physically present in Washington.

119. The subject lines of these emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, and as further described herein. These emails' subject lines contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

120. Additionally, due to Defendant's conduct, Plaintiffs cannot be certain which emails from Defendant contain truthful information and which emails are spam with false and misleading information in subject lines designed to spur consumers into making a purchase. Thus, without a court order requiring Defendant to only send honest emails about sales, Plaintiffs cannot discern



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

which emails are not false or misleading.

**G. Plaintiffs' Injuries**

121. Under CEMA, "the injury is receiving an e-mail that violates its regulations." *Brown v. Old Navy, LLC*, 4 Wash. 3d 580, 567 P.3d 38 (2025). Plaintiffs received the emails identified above, each of which violated CEMA.

122. Plaintiffs were harmed in additional, concrete ways. Each false or misleading email consumed Plaintiffs' time and attention. Plaintiffs spent time receiving, opening, reading, and evaluating Defendant's emails, including time spent assessing whether an advertised deadline was real and whether to purchase before it expired, and time spent sorting and deleting Defendant's messages. Plaintiffs' time has value.

123. Plaintiffs were deprived of truthful information material to their purchasing decisions. Because Defendant misrepresented when its discounts would end, Plaintiffs were denied the ability to decide, on accurate information, whether to buy immediately, whether to comparison shop, or whether to wait.

124. Plaintiffs never agreed to receive false or misleading information from Defendant. Whatever Plaintiffs may have agreed to when they provided their email addresses, they did not agree to receive—and Defendant never disclosed that it would send—emails containing false statements about the duration of its sales.

**H. No Adequate Remedy at Law**

125. Plaintiffs seek an injunction. Plaintiffs are permitted to seek an injunction because they have no adequate remedy at law. Legal remedies here are not adequate because they would not stop Defendant from continuing to transmit emails with false or misleading subject lines to Washington residents.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

## V. CLASS ALLEGATIONS

126. Plaintiffs bring this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington residents who, during the Class Period and while present in Washington, received one or more commercial electronic mail messages from Defendant with subject lines either (i) stating a sale, discount, or price would end at a specified date but the same sale, discount, or price was extended upon expiration; or (ii) stating a sale, discount, or price is time limited, ending, or tethered to a holiday or event, when Defendant reinstated the same or comparable sale, discount, or price for a longer time.

127. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiffs; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

128. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

129. Plaintiffs reserve the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

130. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

131. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act,



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

RCW 19.86.020 (CPA); whether Defendant should be enjoined from such conduct, and whether the greater of actual damages or statutory damages are due to Plaintiffs and the proposed Class.

132. Plaintiffs' claims are typical of the Class's because, among other reasons, Plaintiffs and Class Members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative Members. Further, there are no conflicts between Plaintiffs and the Class.

133. Plaintiffs will fairly and adequately protect the Class's interests because, among other reasons, Plaintiffs share the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

134. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiffs and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiffs and all Class Members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

135. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class Member and that Class Member's resulting damages.

136. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation, and management of this action as a class presents no special



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

difficulties.

## VI. CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

137. Plaintiffs incorporate and reallege paragraphs 1–136 above.

138. Plaintiffs bring this cause of action individually and on behalf of members of the Class.

139. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [u]ses a subject line which, based on the person's actual knowledge or knowledge fairly implied on the basis of objective circumstances, contains false or misleading information in the subject line." RCW 19.190.020(1)(b).

140. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

141. Each email identified above is a "commercial electronic mail message" under CEMA because Defendant sent it for the purpose of promoting the Products for sale. RCW 19.190.010(2).

142. Defendant initiated the transmission of these emails within the meaning of RCW 19.190.010(7) because Defendant is the original sender. In the alternative, Defendant conspired with another to initiate the transmission, or assisted the transmission of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.020(1) and RCW 19.190.010(1).

143. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Defendant knew, or had reason to know based on knowledge fairly implied on the basis of objective circumstances, were held by Washington residents, including because Defendant knew that Plaintiffs and putative Class Members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(2).

144. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

145. Defendant's acts and omissions injured the Plaintiffs and Class Members.

146. For Defendant's violation of CEMA, Plaintiffs are entitled to all available relief, including an injunction against further violations. The balance of equities favors the entry of permanent injunctive relief against Defendant. Plaintiffs, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief. Defendant's unlawful behavior is ongoing as of the date of the filing of this pleading, so without the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

## <u>Second Claim to Relief</u>

### Violation of the Consumer Protection Act, RCW 19.86.020

147. Plaintiffs incorporate and reallege paragraphs 1–136 above.

148. Plaintiffs bring this cause of action individually and on behalf of members of the Class.

149. Plaintiffs and Class Members are "persons" within the meaning of the CPA. RCW 19.86.010(1).



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

150. As alleged above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages to Plaintiffs and Class Members that contained false or misleading information in the subject line.

151. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030(1); RCW 19.190.100. Specifically, it is a violation of the CPA to initiate the transmission of a commercial electronic mail message that "[c]ontains false or misleading information in the subject line." RCW 19.190.030(1)(b).

152. A violation of CEMA establishes all elements necessary to bring a private action under the CPA as a matter of law. *Wright v. Lyft*, 189 Wash. 2d 718, 406 P.3d 1149 (2017).

153. As alleged more fully above, Defendant's transmission of commercial electronic messages to Plaintiffs and Class Members that contained false or misleading information in the subject line also violates the CPA because it constitutes unfair or deceptive practices that occur in trade or commerce.

***Unfair Acts or Practices***

154. As alleged in detail above, Defendant committed "unfair" acts by falsely stating in email subject lines that it was offering a discount off the regular and former prices of its Products, and that the discount was only available for a limited time, when none of this was true (or at minimum was highly misleading).

155. The harm to Plaintiffs and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting whether the Products are discounted and misrepresenting the duration of sales. Plaintiffs and the Class's injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumers only injures healthy competition and harms consumers.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

***Deceptive Acts or Practices***

156. As alleged in detail above, Defendant's representations in email subject lines that the Products were on sale, and the sale was limited in time, are deceptive.

157. Defendant's representations were misleading to Plaintiffs and other reasonable recipients. Defendant knew, through the exercise of reasonable care, that these statements were inaccurate and misleading.

158. Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impact public interest for purposes of applying the CPA. RCW 19.190.030(3); RCW 19.190.100.

159. Defendant's acts and omissions caused injury to Plaintiffs and Class Members. Violations of CEMA establish the injury and causation elements of a CPA claim as a matter of law. Independently, Plaintiffs and Class Members were injured in their business or property as alleged above, including through the loss of their time and the impairment of their email accounts and devices.

160. Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW § 19.86.090.

161. Under the CPA, Plaintiffs and Class Members are entitled to seek, and do seek, the greater of actual damages or statutory damages for each email that violates CEMA, in the following amounts: $500 for each violating email Defendant transmitted before June 11, 2026, and $100 for each violating email Defendant transmitted on or after June 11, 2026. Plaintiffs seek treble



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

damages to further Plaintiffs' and Class Members' financial rehabilitation, encourage citizens to bring CPA actions, deter Defendant and other persons from committing CEMA violations, and punish Defendant for false and misleading advertising practices.

162. Plaintiffs and Class Members are also entitled to, and seek, injunctive relief prohibiting further violations of the CPA.

163. In the further alternative, Defendant's transmission of email subject lines falsely representing that its discounts were about to expire constitutes an unfair or deceptive act or practice occurring in trade or commerce that affects the public interest and that caused injury to Plaintiffs and Class Members, in violation of RCW 19.86.020.

## VII. JURY DEMAND

164. Plaintiffs will demand a jury trial by separate document in accordance with Local Civil Rule 38(b)(1).

## VIII. PRAYER FOR RELIEF

Plaintiffs ask that the Court:

A. Certify the proposed Class, appoint Plaintiffs as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiffs' and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiffs' and the Class's favor, awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiffs' costs of suit, including reasonable attorneys' fees; and



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

E. Order such further relief as the Court finds appropriate.

RESPECTFULLY SUBMITTED this 22nd day of September, 2026.

/s/ Samuel J. Strauss
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli (*pro hac vice* forthcoming)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue - Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Brian Levin (*pro hac vice* forthcoming)
**LEVIN LAW, P.A.**
2665 S. Bayshore Drive - PH2B
Miami, FL 33133
Telephone : (305) 402-9050
brian@levinlawpa.com

*Counsel for Plaintiff and the Putative Class*

ELECTRONICALLY FILED
9/22/2026 11:04 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 26-2-09794-31

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| JARED GILL and MARK KELLEY, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENDER MUSICAL INSTRUMENTS CORPORATION,<br><br>Defendant. | Case No.: 26-2-09794-31<br><br>SUMMONS |

**TO: SNOHOMISH COUNTY SUPERIOR COURT CLERK**
**AND TO: FENDER MUSICAL INSTRUMENTS CORPORATION**

A lawsuit has been started against you in the above-entitled court by Plaintiffs Jared Gill and Mark Kelley, individually and on behalf of others similarly situated, by and through their attorney, Samuel J. Strauss of Strauss Borrelli PLLC. Plaintiffs' claims are stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within 20 days after the service of this Summons, or 60 days if you were personally served outside the state, excluding the day of service, or a default judgment may be entered against you without notice. A



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

default judgment is one where the plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this Summons. Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

RESPECTFULLY SUBMITTED this 22nd day of September, 2026.

*/s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli (*pro hac vice* forthcoming)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue - Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Brian Levin (*pro hac vice* forthcoming)
**LEVIN LAW, P.A.**
2665 S. Bayshore Drive - PH2B
Miami, FL 33133
Telephone : (305) 402-9050
brian@levinlawpa.com

*Counsel for Plaintiff and the Putative Class*

## NOTICE RE: MILITARY SERVICE MEMBERS

**NOTICE**: State and federal law provide protections to defendants who are on active duty in the military service, and to their dependents. Dependents of a service member of the service member's spouse, the service member's minor child, or an individual for whom the service member provided more than on-half of the individual's support for one hundred eighty days immediately preceding an application for relief.

One protection provided is the protection against the entry of a default judgment in certain circumstances. **This notice only pertains to a defendant who is a dependent of a member of the national guard or a military reserve component under a call to active service for a period of time of more than thirty consecutive days.** Other defendants in military service also have protections against default judgments not covered by this notice. If you are the dependent of a member of the national guard or a military reserve component under a call to active service for a period of more than thirty consecutive days, you should notify the plaintiff or the plaintiff's attorneys in writing of your status as such within twenty days of the receipt of this notice.

If you fail to do so, then a court or an administrative tribunal may presume that you are not a dependent of an active-duty member of the national guard or reserves, and proceed with the entry of an order of default and/or a default judgment without further proof of your status. Your response to the plaintiff or plaintiff's attorney(s) about your status does not constitute an appearance for jurisdictional purposes in any pending litigation nor a waiver of your rights.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

ELECTRONICALLY FILED
9/22/2026 11:04 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 26-2-09794-31

**CIVIL**

SNOHOMISH COUNTY SUPERIOR COURT

26-2-09794-31 Case Information Cover Sheet (CICS)

**Case Number**____________________ **Case Title** *Gill et ano. v. Fender Musical Instruments Corp.*

**Attorney Name** Samuel J. Strauss **Bar Membership Number** #46971

Please check one category that best describes this case for indexing purposes. Accurate case indexing not only saves time in docketing new cases, but helps in forecasting needed judicial resources. Cause of action definitions are listed on the back of this form. Thank you for your cooperation.

*Form updated 12/28/2020*

- ☐ ABJ Abstract of Judgment
- ☐ ABL Abusive Litigation
- ☐ ALR Administrative Law Review
- ☐ ALRJT Administrative Law Review-Jury Trial (L&I)
- ☐ BAT Ballot Title
- ☐ CHN Non-Confidential Change of Name
- ☐ CBC Contractor Bond Complaint
- ☐ COL Collection
- ☐ CON Condemnation
- ☐ COM Commercial
- ☐ CRP Pet. for Cert. of Restoration of Opportunity
- ☐ DOL Appeal Licensing Revocation
- ☐ DVP Domestic Violence
- ☐ EOM Emancipation of Minor
- ☐ FJU Foreign Judgment
- ☐ FOR Foreclosure
- ☐ FPO Foreign Protection Order
- ☐ HAR Unlawful Harassment
- ☐ INJ Injunction
- ☐ INT Interpleader
- ☐ LCA Lower Court Appeal – Civil
- ☐ LCI Lower Court Appeal – Infractions
- ☐ LUPA Land Use Petition Act
- ☐ MAL Other Malpractice
- ☐ MED Medical Malpractice
- ☐ MHA Malicious Harassment
- ☒ MSC2 Miscellaneous – Civil
- ☐ MST2 Minor Settlement – Civil (No Guardianship)
- ☐ PCC Petition for Civil Commitment (Sexual Predator)
- ☐ PFA Property Fairness Act
- ☐ PIN Personal Injury
- ☐ PRA Public Records Act
- ☐ PRG Property Damage – Gangs
- ☐ PRP Property Damages
- ☐ QTI Quiet Title
- ☐ RDR Relief from Duty to Register
- ☐ RFR Restoration of Firearm Rights
- ☐ SDR School District-Required Action Plan
- ☐ SER Subdivision Election Process Law Review
- ☐ SPC Seizure of Property-Commission of Crime
- ☐ SPR Seizure of Property-Resulting from Crime
- ☐ STK Stalking Petition
- ☐ SXP Sexual Assault Protection
- ☐ TAX Employment Security Tax Warrant
- ☐ TAX L & I Tax Warrant
- ☐ TAX Licensing Tax Warrant
- ☐ TAX Revenue Tax Warrant
- ☐ TMV Tort – Motor Vehicle
- ☐ TRJ Transcript of Judgment
- ☐ TTO Tort – Other
- ☐ TXF Tax Foreclosure
- ☐ UND Unlawful Detainer – Commercial
- ☐ UND Unlawful Detainer – Residential
- ☐ VAP Vulnerable Adult Protection Order
- ☐ VEP Voter Election Process Law Review
- ☐ VVT Victims of Motor Vehicle Theft-Civil Action
- ☐ WDE Wrongful Death
- ☐ WHC Writ of Habeas Corpus
- ☐ WMW Miscellaneous Writs
- ☐ WRM Writ of Mandamus
- ☐ WRR Writ of Restitution
- ☐ WRV Writ of Review
- ☐ XRP Extreme Risk Protection Order
- ☐ XRU Extreme Risk Protection Order Under 18

**IF YOU CANNOT DETERMINE THE APPROPRIATE CATEGORY, PLEASE DESCRIBE THE CAUSE OF ACTION BELOW**

[x] CONSUMER PROTECTION ACT - CPA

***Please Note: Public information in court files and pleadings may be posted on a public Web site.***

**APPEAL/REVIEW**

**Administrative Law Review**-Petition to the superior court for review of rulings made by state administrative agencies.
**Appeal of a Department of Licensing Revocation**-Appeal of a DOL revocation (RCW 46.20.308(9)).
**Lower Court Appeal-Civil**-An appeal for a civil case; excludes traffic infraction and criminal matters.
**Lower Court Appeal-Infractions**-An appeal for a traffic infraction matter.

**CONTRACT/COMMERCIAL**

**Breach of Contract**-Complaint involving monetary dispute where a breach of contract is involved.
**Contractor Bond Complaint**-Complaint for claim against a contractor or subcontractor bond.
**Commercial Contract**-Complaint involving monetary dispute where a contract is involved.
**Commercial Non-Contract**-Complaint involving monetary dispute where no contract is involved.
**Third Party Collection**-Complaint involving a third party over a monetary dispute where no contract is involved.

**PROTECTION ORDER**

**Civil Harassment**-Petition for protection from civil harassment.
**Domestic Violence** -Petition for protection from domestic violence.
**Extreme Risk Protection Order**-Petition to restrict ownership, possession, custody or control of a firearm or concealed weapons permit.
**Extreme Risk Protection Order Under 18**-Petition to restrict access, possession, purchase, custody or control of a firearm by a minor.
**Foreign Protection Orders**-Any protection order of a court of the United States, or of any state, territory, or tribal land, which is entitled to full faith and credit in this state.
**Sexual Assault Protection**-Petition under RCW 7.90.020.
**Stalking**- Petition for protection from stalking for victims who do not qualify for a domestic violence protection order. (RCW 7.92.030).
**Vulnerable Adult Protection**-Petition for protection order for vulnerable adults, as those persons are defined in RCW 74.34.020.

**JUDGMENT**

**Abstract Only**-A certified copy of a judgment docket from another superior court, an appellate court, or a federal district court.
**Foreign Judgment**-Any judgment, decree, or order of a court of the United States, or of any state or territory, which is entitled to full faith and credit in this state.
**Judgment, Another County**-A certified copy of a judgment docket from another superior court within the state.
**Judgment, Another State**-Any judgment, decree, or order from another state that is entitled to full faith and credit in this state.
**Tax Warrants** -A notice of assessment by a state agency creating a judgment/lien in the county in which it is filed. (Four types available.)
**Transcript of Judgment**-A certified copy of a judgment from a court of limited jurisdiction to a superior court in the same county.

**OTHER COMPLAINT/PETITION**

**Abusive Litigation**- Request to restrict a current or former intimate partner party from filing abusive litigation for the purposes of harassing, intimidating, or maintaining contact with the other party
**Ballot Title**-Action for review of the ballot title (RCW 29A.36.090).
**Petition for Certificate of Restoration of Opportunity**-Request for order that is intended to facilitate obtaining housing and employment (RCW 9.97.020).
**Change of Name**-Petition for a change of name. If change is confidential due to domestic violence/anti-harassment see case type 5 instead.
**Deposit of Surplus Funds**-Deposit of money or other item with the court.
**Emancipation of Minor**-Petition by a minor for a declaration of emancipation.
**Injunction**-Complaint/petition to require a person to do or refrain from doing a particular thing.
**Interpleader**-Petition for the deposit of disputed earnest money from real estate, insurance proceeds, and/or other transaction(s).
**Malicious Harassment**-Suit involving damages resulting from malicious harassment.
**Minor Settlements**-Petition for a court decision that an award to a minor is appropriate when no letters of guardianship are required (e.g., net settlement value $25,000 or less).
**Petition for Civil Commitment (Sexual Predator)**-Petition for the involuntary civil commitment of a person who 1) has been convicted of a sexually violent offense whose term of confinement is about to expire or has expired, 2) has been charged with a sexually violent offense and who has been determined to be incompetent to stand trial who is about to be released or has been released, or 3) has been found not guilty by reason of insanity of a sexually violent offense and who is about to be released or has been released, and it appears that the person may be a sexually violent predator.
**Property Damage-Gangs**-Complaint involving damage to property related to gang activity.
**Public Records Act**-Actions filed under RCW 42.56.
**Relief from Duty to Register**-Civil action requesting relief from duty to register as a sex offender. Petition can address the registration obligation that arises from multiple cases. RCW 9A.44.142, 9A.44.143.
**Restoration of Firearms Rights**-Petition seeking restoration of firearms rights under RCW 9.41.040 and 9.41.047. *(Eff. 9-2-2014)*
**School District-Required Action Plan**-Petition filed requesting court selection of a required action plan proposal relating to school academic performance.
**Seizure of Property from the Commission of a Crime**-Seizure of personal property that was employed in aiding, abetting, or commission of a crime, from a defendant after conviction.
**Seizure of Property Resulting from a Crime**-Seizure of tangible or intangible property that is the direct or indirect result of a crime, from a defendant following criminal conviction (e.g., remuneration for, or contract interest in, a depiction or account of a crime).
**Subdivision Election Process Review**-Petition seeking court acknowledgement of compliance (RCW 29A.92).
**Subpoenas**-Petition for a subpoena.
**Voter Election Law Review**-Action filed by voters requesting review of Voting Rights Act (RCW 29A.92).

**PROPERTY RIGHTS**

**Condemnation**-Complaint involving governmental taking of private property with payment, but not necessarily with consent.
**Foreclosure**-Complaint involving termination of ownership rights when mortgage or tax foreclosure is involved; ownership is not in question.
**Land Use Petition**-Petition for an expedited judicial review of a land use decision made by a local jurisdiction (RCW 36.70C.040).
**Property Fairness**-Complaint involving the regulation of private property or restraint of land use by a government entity brought forth by Title 64 RCW.
**Quiet Title**-Complaint involving the ownership, use, or disposition of land or real estate other than foreclosure.
**Unlawful Detainer**-Complaint involving the unjustifiable retention of lands or attachments to land, including water and mineral rights.

**TORT, MEDICAL MALPRACTICE**

**Hospital**-Complaint involving injury or death resulting from a hospital.
**Medical Doctor**-Complaint involving injury or death resulting from a medical doctor.
**Other Health Care Professional**-Complaint involving injury or death resulting from a health care professional other than a medical doctor.

**TORT, MOTOR VEHICLE**

**Death**-Complaint involving death resulting from an incident involving a motor vehicle.
**Non-Death Injuries** -Complaint involving non-death injuries resulting from an incident involving a motor vehicle.
**Property Damage Only**-Complaint involving only property damages resulting from an incident involving a motor vehicle.

**TORT, NON-MOTOR VEHICLE**

**Asbestos**-Complaint alleging injury resulting from asbestos exposure.
**Other Malpractice**-Complaint involving injury resulting from other than professional medical treatment.
**Personal Injury**-Complaint involving physical injury not resulting from professional medical treatment, and where a motor vehicle is not involved.
**Products Liability**-Complaint involving injury resulting from a commercial product.
**Property Damages**-Complaint involving damage to real or personal property excluding motor vehicles.
**Victims of Motor Vehicle Theft**-Complaint filed by a victim of car theft to recover damages. (RCW 9A.56.078).
**Wrongful Death**-Complaint involving death resulting from other than professional medical treatment.

**WRIT**

**Writ of Habeas Corpus**-Petition for a writ to bring a party before the court.
**Writ of Mandamus**-Petition for writ commanding performance of a particular act or duty.
**Writ of Restitution**-Petition for a writ restoring property or proceeds; not an unlawful detainer petition.
**Writ of Review**-Petition for review of the record or decision of a case pending in the lower court; does not include lower court appeals or administrative law reviews.
**Miscellaneous Writs**